# United States District Court
# Central District of California

| | |
|---|---|
| KAZI A. RASHID,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. 2:18-cv-05110-ODW (KSx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [19]** |

## I. INTRODUCTION

Plaintiff Kazi A. Rashid ("Plaintiff") brings this action *pro se*, seeking review of an administrative decision permanently disqualifying him from accepting SNAP benefits at his store, Harry's Market. Presently before the Court is Defendant's Motion for Summary Judgment, in which it argues that Plaintiff fails to present a genuine issue of material fact, and that it is entitled to judgment as a matter of law. For the following reasons, the Court **GRANTS** Defendant's Motion.[1] (Mot. for Summ. J. ("Mot."), ECF No. 19.)

---

[1] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Plaintiff is the owner and operator of Harry's Market, located at 8751 Compton Avenue, Los Angeles, California, 90002. (Compl. 2, ECF No. 1.)

On June 8, 2018, Plaintiff filed a Complaint seeking review of an administrative decision of the United States Department of Agriculture ("USDA"), which permanently disqualified Plaintiff's store from the Supplemental Nutrition Assistance Program ("SNAP") for trafficking in food stamps. (*See* Compl.)

SNAP is intended "to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011. SNAP benefits may only be used at authorized stores for eligible food items, *i.e.* "[a]ny food or food product for home consumption except alcoholic beverages, tobacco, hot foods or hot food products ready for immediate consumption." 7 U.S.C. § 2012(k); *see* 7 C.F.R. § 271.2 (similar); *see also* 7 U.S.C. § 2013(a). In Los Angeles, SNAP utilizes electronic benefit transfer ("EBT") systems rather than food coupons or stamps. (Statement of Uncontroverted Facts ("SUF") 9, ECF No. 19-2; Decl. of Luz Pena ("Pena Decl.") ¶ 6, ECF No. 19-3.) Benefit recipients are issued plastic cards, similar to credit cards, which have magnetic strips encoded with a card number that is linked to the recipient's personal information. (SUF 10.) Authorized stores run the EBT cards through a Point of Sale ("POS") device, which is connected to a personal identifying number ("PIN") entry pad, and a printer for producing receipts. (*Id.*) The POS interacts with a host computer that processes and stores information and communicates with other computers as necessary. (*Id.*) This system allows the USDA's Food and Nutrition Service ("FNS") to track benefits from the recipient to the retailer. (SUF 11.) Every transaction at an authorized retail store is recorded electronically to identify the recipient card number, the amount of the EBT purchase, and the exact date and time of the transaction. (*Id.*) Thus, FNS can identify transactions consistent with food stamp trafficking from the electronic data. (*See id.*)

Trafficking in food stamps is defined to include the "buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits . . . for cash or consideration other than eligible food." 7 C.F.R. § 271.2. If FNS determines that a store has engaged in trafficking, it may *permanently* disqualify the store from SNAP. *See* 7 U.S.C. § 2021(b)(3); 7 C.F.R. § 278.6. Such a penalty is warranted for even a *single* trafficking violation. *See Lee v. United States*, 623 F. App'x 886, 887 (9th Cir. 2015); *Kahin v. United States*, 101 F. Supp. 2d 1299, 1303 (S.D. Cal. 2000); 7 U.S.C. § 2021(b)(3)(B) (disqualification shall be "permanent" upon the "first occasion" of a disqualification based on "trafficking.") (emphasis added); 7 C.F.R. § 278.6(e) ("The FNS regional office shall . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in § 271.2.").

The FNS has discretion to impose a civil monetary penalty ("CMP") in lieu of permanent disqualification if the store had "an effective compliance policy and program to prevent violations." 7 C.F.R. § 278.6(i). To be eligible for a CMP, a store must "timely submit[] to FNS substantial evidence" that: (1) it had developed an effective compliance policy; (2) the policy and program were in place prior to the violation(s); (3) the store had developed and instituted an effective training program; and (4) the store owner was unaware of, did not approve, did not benefit from, or was in no way involved in the violation. *Id*.

FNS investigated EBT transactions at Harry's Market from June 2017 to November 2017. (Compl. 2; SUF 12.) On October 16, 2017, FNS conducted a store visit, where it took photographs and wrote a summary describing the interior of the store, as well as the state of cash registers and the number of shopping carts. (SUF 3–8.)

On December 18, 2017, FNS sent a charge letter to Plaintiff explaining why it believed he had trafficked in food stamps. (SUF 13.) In the letter, FNS addressed two categories of suspicious transactions: (1) 215 transactions totaling $19,895.89 in what

it called "excessively large purchase transactions"; and (2) 104 transactions totaling $6,393.93 that were made in "unusually short time frames." (SUF 14–15.)

The letter also advised Plaintiff of the investigation and notified him that the Market had been charged with trafficking, and that the "sanction for the trafficking violation(s) . . . is permanent disqualification." (Decl. of Grace Park ("Park Decl."), Ex. 2, Part 1, at 36, ECF No. 19-6). The charge letter further advised Plaintiff that the SNAP regulations also provide that under certain conditions, FNS may instead impose a CMP. (*Id.*) Finally, the letter explained the requirements to be considered for a CMP:

> The SNAP regulations, Section 278.6(1), list the criteria that you must meet in order to be considered for a CMP. If you request a CMP, you must meet each of the four criteria listed and provide the documentation as specified within 10 calendar days of your receipt of this letter. No extension of time can be granted for making a request for a CMP or for providing the required documentation. If your request and the required documentation are not submitted on time, you will lose your right for any further consideration for a CMP.

*Id.*

On December 27, 2017 Plaintiff responded to the charge letter, denying all allegations. (Park Decl., Ex. 2, part 2, at 6-8, ECF No. 19-7.) In his response, Plaintiff explained that in his fifty years of business, no such allegation has ever been proven against him. (*Id.* at 9.) Moreover, he argued that he cannot control the frequency in which customers make purchases; that his store carries expensive items; that he provides free rides to customers; and that his store is the only store in the neighborhood that accepts SNAP. (*Id*. at 10-12.) It is worth noting with respect to Plaintiff's ride policy and status as the only SNAP-accepting grocer in his neighborhood, the record indicates Plaintiff's ride program did not exist during FNS initial inspection, and there are approximately thirty-nine other grocers who accept SNAP in a two-mile radius from Harry's Market. (*Id*.at 11).

In a letter dated January 25, 2018, FNS informed Plaintiff that it had considered his response and the available evidence and determined that the "violations cited in [the] charge letter occurred." (*Id.* at 13). FNS had also considered plaintiff's eligibility for a CMP but determined that he was not eligible because he "failed to submit sufficient evidence to demonstrate that [Harry's Market] had established and implemented an effective compliance policy and program to prevent violations of [SNAP]." (*Id.*) Accordingly, Harry's Market was permanently disqualified from the SNAP program. (*Id.*)

Plaintiff timely sought administrative review of FNS's decision, with the benefit of counsel. (*Id.* at 15-18.) Plaintiff challenged the finding that trafficking violations occurred, arguing for the first time that: 1) patrons often return to the market multiple times throughout the day; 2) that because EBT does not contain photo identification, multiple individuals can use the same card; and 3) disqualifying Harry's Market from accepting SNAP will have an adverse impact on the community. (*Id.* at 16.)

On May 9, 2018, the Administrative Review Officer ("ARO") upheld the permanent disqualification for trafficking. (*Id.* at 33, 34–45.) The ARO began by setting forth its analysis and findings. Notably, the ARO listed highest priced eligible food items, as follows: "Cereal ($11.99), Coffee ($19.99), Coffee Mate ($10.99), and canned Abalone ($14.99)." (*Id.* at 38.) In reaching its conclusion, the ARO focused on the multiple transactions in unusually short periods and excessively large purchases. (*Id.* at 36.) As to the former, the ARO concluded that the layout of the store and cluttered aisles would make navigating the store difficult, and the dated checkout registers make completing rapid transactions difficult. (*Id.* at 39-40.) The ARO concluded it was "more likely than true that the irregular transactions cited in the charge letter are due to trafficking in SNAP benefits." (*Id.* at 40.) As to the latter, the ARO noted that Harry's Market does not offer food in bulk nor ethnic or specialty foods that sell for a high price. (*Id.*) Thus, the substantial number of high dollar

purchases "call[] into question the legitimacy of these transactions" which range from "$57.38 to $400.45." (*Id.*) The ARO noted that the site investigation noted rusted, dusty cans with faded expiration dates which indicated a slow turnover rate or stock items that may be expired. (*Id.* at 41.) The ARO concluded that the state of stock suggested that it was unlikely that households were utilizing Harry's for all their eligible grocery needs. (*Id.* at 38.) The ARO also reviewed purchase receipts against Plaintiff's contention that he purchased large meat orders, but because the only meat-purchase receipt Plaintiff provided lacked a date, it was not considered. (*Id.* at 41-42.)

With respect to a CMP, the ARO found that Plaintiff did not request a CMP or provide substantial evidence that he met the CMP criteria within ten days following receipt of the charge letter as required by SNAP regulations, and therefore FNS's decision to not assess a CMP in lieu of permanent disqualification was sustained. (*Id.* at 44.) The ARO upheld the permanent disqualification of the Market from the SNAP. (*Id*. at 45.)

Plaintiff filed his Complaint on June 8, 2018, (ECF No. 1), and Defendant moved for Summary Judgment on May 6, 2019 (ECF No. 19).

### III. LEGAL STANDARD

An aggrieved store may bring an action for judicial review challenging the agency decision by filing a complaint against the United States in federal district court. *Kim v. United States*, 121 F.3d 1269, 1271–72 (9th Cir. 1997); 7 U.S.C. § 2023(a)(13). District courts conduct *de novo* review to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). "A trial de novo is a trial which is not limited to the administrative record—the plaintiff may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency." *Kim*, 121 F.3d at 1272 (internal quotation marks omitted). Plaintiff bears the burden of proving by a preponderance of the evidence that the violations did not occur. *See id.*; *Lee*, 623 F. App'x at 887 (same). If the plaintiff fails to demonstrate a material dispute of fact as to the existence of a program violation,

summary judgment may be granted in favor of the government. *See Kahin*, 101 F. Supp. 2d at 1302; *see also Redmond v. United States*, 507 F.2d 1007, 1011–12 (5th Cir. 1975) ("[T]he agency action stands, unless the plaintiff proves that it should be set aside.").

In its review of the FNS action, the court is to "apply a bifurcated standard of review." *Wong v. United States*, 859 F.2d 129, 132 (9th Cir. 1988). Whereas the finding that a store committed a violation "is reviewed de novo, review of the sanction imposed . . . is governed by the arbitrary and capricious standard." *Id.* Under that standard, "the court examines the sanction imposed by the FNS in light of the administrative record to judge whether the agency properly applied the regulations [and] to determine whether the sanction is unwarranted in law . . . or without justification in fact." *Id.* (internal quotation marks omitted); *Kahin*, 101 F.Supp.2d at 1302 (same).

## IV. DISCUSSION

As an initial matter, the Court notes that Plaintiff failed to file a proposed Statement of Genuine Disputes pursuant to Local Rule 56-2. Although the Court is aware of Plaintiff's *pro se* status, his failure to file a Statement of Genuine Disputes, coupled with the fact that he does not dispute the material issues presented herein leaves the Court with no choice but to deem the presented issues and facts as undisputed.

> "In order to preclude summary judgment, Plaintiff must raise material issues of fact as to each of the violations charged against the [Market]. Since permanent disqualification is warranted on 'the first occasion' of . . . trafficking, it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth . . . by the FNS."

*Kahin*, 101 F. Supp. 2d at 1303.

Plaintiff's Opposition contains seven challenges to Defendant's Motion. (Opp'n 1–2, ECF No. 20.) First, Plaintiff maintains that he has never violated FNS

guidelines; second, he never received clear guidelines from FNS; third, he faced a similar charge in 2006, but the charge was resolved in his favor; fourth, all sales at Harry's are accounted under FNS guidelines; fifth, he claims that he "appreciates SNAP authorities having them place physical evidences that show any such violations occurred in Harry's Market"; sixth, he has responded to all inquiries and followed up with the government; and finally, he submitted a settlement offer. Unfortunately, none of Plaintiff's challenges generate a genuine issue of material fact. (*Id.*)

Accordingly, no genuine issue of material fact exists, and Defendant is entitled to judgment as a matter of law as it is undisputed that violations of the SNAP program occurred at plaintiff's store and that the imposition of the permanent disqualification sanction was neither arbitrary nor capricious.

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. (ECF No. 19.) The parties shall submit a joint [Proposed] Judgment by **TUESDAY, July 23, 2019**.

**IT IS SO ORDERED**.

July 9, 2019

							_____
							**OTIS D. WRIGHT, II**
							**UNITED STATES DISTRICT JUDGE**